# 2004 DTA 131

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE ARECIBO

FERNANDO MARÍN COLÓN Y OTROS
Recurridos

v.

ROCHE PRODUCTS, INC. Y OTROS
Peticionarios

Núm. KLCE-04-00800

San Juan, Puerto Rico, a 12 de agosto de 2004

Panel integrado por su Presidenta, la Juez López Vilanova,
y los Jueces Córdova Arone y González Rivera

López Vilanova, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso de epígrafe se presentó ante este Tribunal el 17 de junio de 2004. Roche Products, Inc. (Roche) recurre de una Resolución dictada por el Tribunal de Primera Instancia, Sala de Arecibo, que denegó la desestimación solicitada por éste de las reclamaciones presentadas por 84 empleados y permitió se enmendara la demanda. Roche señala que el foro recurrido erró porque las reclamaciones de esos 84 empleados están prescritas.

Evaluado el escrito y sus voluminosos apéndices, ordenamos la comparecencia de los recurridos mediante escrito de mostrar. Estos no comparecieron en el término concedido. Transcurrido en exceso dicho término, el 4 de agosto de 2004, ▮ el abogado de los recurridos presentó un escrito de cinco páginas. En el mismo expone que no compareció en el término que se le ordenó *"por estar envuelto (sic) en la preparación de otros alegatos [así como] en otros asuntos urgentes"*. Pág. 1 de la *"Solicitud de que se acepte escrito mostrando causa vencido el término concedido"*.

El abogado de los allí demandantes expone que *"los aquí comparecientes, en ánimo de concluir estos procedimientos, no tienen objeción y consienten a que la eliminación de partes [sea] con perjuicio"*. Pág. 4 de su comparecencia. El abogado no aclara quiénes son los comparecientes que así alegan. De otra parte aceptan que sus planteamientos ante el foro recurrido constituyen *"su nueva teoría sobre el [período de tomar alimentos]"*. Pág. 4 del escrito.

Evaluados sus argumentos a la luz de toda la documentación ante nos, resolvemos conforme intimado, revocamos. Explicamos porqué.

### I

Los hechos que culminan con el recurso ante nos se originaron hace cuatro (4) años con la presentación de una demanda el 21 de agosto de 2000. En la misma, los allí demandantes y aquí recurridos imputaron a Roche determinadas violaciones a la Ley Núm. 379 de 15 de marzo de 1948 (29 L.P.R.A. sec. 283) y a la hoy derogada Ley Núm. 96 de 26 de junio de 1956. Alegaron que no disfrutaron de una (1) hora del período de tomar alimentos y, además, que no fueron compensados por el tiempo que invertían colocándose el uniforme de trabajo. Incluyeron también alegaciones por concepto de salarios adeudados por el alegado fraccionamiento ilegal de sus vacaciones, tiempo compensable por el séptimo día consecutivo de trabajo, diferenciales por turno de trabajo y bono de Navidad.

Roche contestó la demanda. Alegó, entre otras defensas afirmativas, que los allí demandantes solicitaron y

obtuvieron la autorización del Secretario del Trabajo y Recursos Humanos de Puerto Rico (Secretario del Trabajo) para reducir y/u obviar los períodos de alimentos tanto en la jornada regular como en la extraordinaria, conforme a la ley y reglamentación entonces vigente y aplicable. (Págs. 9-10 del Apéndice). Roche alegó, además, que los permisos de reducción del período para tomar alimentos se obtuvieron voluntariamente y sin que mediara dolo o intimidación de clase alguna; y que los allí demandantes estaban impedidos por sus propios actos de instar dicha reclamación.

El 12 de junio de 2001, los allí demandantes solicitaron al foro recurrido (en adelante TPI) se les permitiera presentar demanda enmendada (págs. 12-37 del Apéndice). Solicitaron, en esencia, se le permitiera unir ciento tres (103) nuevos demandantes y, además, añadir como co-demandado al patrono sucesor, Marion Merrell International (Marion).

El 18 de junio de 2001, el TPI emitió orden en virtud de la cual autorizó la demanda enmendada. ██ (Págs. 38-39 del Apéndice). Oportunamente, y luego de que el TPI concediera una prórroga a Roche para contestar la misma, ██ el 24 de septiembre de 2001, se presentó la contestación. (Págs. 47-52 del Apéndice).

Así las cosas, el 8 de noviembre de 2001, Roche notificó a los demandantes un Primer Pliego de Interrogatorios y requerimiento de Producción de Documentos. (Págs. 53-63 del Apéndice) **Veintitrés de los demandantes, nunca contestaron los mismos**. Ello, a pesar de que el TPI les dio múltiples oportunidades para así hacerlo. (Págs. 75-78; 177-183 del Apéndice).

Mientras tanto, el 7 de noviembre de 2002, los allí co-demandantes, Jaime Maisonet Hernández (Maisonet) y Norberto Aponte Rodríguez (Aponte), solicitaron la desestimación, sin perjuicio, de sus reclamaciones. (Págs. 146-150 del Apéndice). Roche se opuso a que dicha desestimación fuera sin perjuicio. (Págs. 158-161 del Apéndice). El 31 de marzo de 2003, el TPI desestimó, con perjuicio, las reclamaciones de Maisonet y Aponte. ██ Págs. 169-171 del Apéndice.

Finalmente, y luego de varias solicitudes de desestimación presentadas por Roche, el 8 de abril de 2003, el TPI concedió un término **final** de diez (10) días a los demandantes que no habían contestado los interrogatorios, so pena de desestimar con perjuicio sus reclamaciones. Dicha orden les fue notificada a todos y cada uno de dichos demandantes. ██ (Págs. 177-183 del Apéndice). A pesar de ello, sólo un demandante presentó sus contestaciones. Los demás nunca explicaron su incumplimiento.

Posteriormente, el 11 de abril de 2003, los codemandantes Elliut Declet Delgado (Declet), Vicente González Algarín (González) y Olga I. Rosa Olivares (Rosa), presentaron una moción informativa *Desistiendo sin Perjuicio por Prescripción*. (Págs. 172-176 del Apéndice). En la misma, **informaban al TPI** que dichos co-demandantes **desistían** sin perjuicio **de sus respectivas reclamaciones por éstas estar prescritas**. ██ Véase Id. El 21 de abril de 2003, los demandantes presentaron otra moción informándole al TPI que la co-demandante Myrna Ramos Torres (Ramos), también **desistía sin perjuicio** de su reclamación **por no tener interés** en proseguir con la misma. ██ (Págs. 184-185 del Apéndice). El 7 de mayo de 2003, los codemandantes Reyes J. Aponte (Reyes), Lourdes González Fernández (González) y Sara Morales Torres (Morales), también solicitaron que se desestimara sin perjuicio sus respectivas reclamaciones **por no tener interés en proseguir con las mismas**. (Págs. 196-199 del Apéndice).

Roche se opuso a que todas dichas reclamaciones fueran desestimadas sin perjuicio. Adujo que las mismas, no sólo estaban prescritas, sino que ningún interés existía por parte de los reclamantes en tramitar las mismas. **El tribunal de instancia nunca dispuso sobre estos reclamos.** (Págs. 202-386 del Apéndice).

Transcurridos varios meses desde que el TPI concediera el término final de diez (10) días a los veintiséis codemandantes para que contestaran los interrogatorios, el 15 de julio de 2003, una vez más, Roche reiteró su

solicitud de que se desestimaran con perjuicio, las reclamaciones de éstos. ■ (Págs. 202-203 del Apéndice). El tribunal recurrido **no hizo pronunciamiento alguno con respecto a dicha solicitud**. Ante ello, el 28 de agosto de 2003, Roche nuevamente presentó una moción reiterando solicitud de sentencia desestimando causas de acción de los demandantes que no han contestado interrogatorios y de los que han solicitado desistimiento. (Págs. 204-211 del Apéndice). **El tribunal recurrido tampoco se pronunció con respecto a esta solicitud**. Así, pues, el 20 de octubre de 2003, Roche presentó una moción urgente de solicitud de orden y señalamiento. (Págs. 212-386 del Apéndice). En la misma, Roche *"suplicó"* al TPI, que dictara sentencia parcial desestimando, con perjuicio, las reclamaciones pertenecientes a los co-demandantes que no habían contestado sus interrogatorios y aquellas reclamaciones que estuvieran prescritas, las cuales sumaban más de cincuenta (50). **Tampoco, en esta ocasión, el TPI se pronunció al respecto.**

Ya para esa fecha y desde el 10 de mayo de 2002, Roche había enviado comunicaciones al abogado de los demandantes informándole que de la faz de la demanda era evidente que existían varias reclamaciones prescritas y que era su deber evaluar las mismas y presentar moción de desistimiento, en lugar de forzar a la parte demandada a continuar defendiéndose de las mismas o, peor aún, a tener que presentar una moción de desestimación. (Págs. 303-304, 357 y 483 del Apéndice). Aunque mediante comunicación de 6 de mayo de 2003, el propio represente legal de la parte allí demandante proveyó las fechas en que, según éste, los demandantes dejaron de trabajar con Roche y era evidente que más de la mitad de las reclamaciones estaban prescritas, no fue hasta diciembre de 2003 que finalmente indicó que presentaría mociones de desistimiento con respecto a dichos demandantes. (Págs. 555-556 del Apéndice).

El 16 de febrero de 2004, la parte allí demandante presentó una solicitud para enmendar la demanda original, así como demanda enmendada. (Págs. 387-426 del Apéndice). En la demanda enmendada, los allí demandantes y aquí recurridos introdujeron una nueva teoría legal con respecto a la validez de las estipulaciones firmadas por los demandantes para reducir su período de tomar alimentos (PTA). Alegaron, específicamente, que las estipulaciones de reducción del PTA presentadas por éstos al Secretario del Trabajo deben ser consideradas como peticiones administrativas y no como contratos, que es lo que originalmente habían argumentado.

Alegaron que como dichas estipulaciones debían ser aprobadas por el Secretario del Trabajo, la presentación de las mismas ante dicha agencia daba inicio a un procedimiento administrativo de naturaleza cuasi-judicial, cuya resolución era la emisión del permiso. En consecuencia, toda vez que el permiso hacía las veces de una resolución, la misma debía ser notificada a los demandantes para que los permisos adquirieran validez. Así, dicha parte entiende que, como los permisos de reducción del PTA no le fueron notificados a los propios mandantes éstos no son válidos y, por ende, no le son oponibles. Lo anterior, sin citar fuente alguna de derecho que apoye tal *"teoría"*. ■

Roche se opuso a la enmienda a la demanda el 5 de marzo de 2004, bajo el fundamento de que la misma tenía el propósito de traer tardíamente una nueva teoría legal. Alegó, además, que la misma era frívola. (Págs. 427-544 del Apéndice). En esencia, Roche argumentó que la enmienda a la demanda introducía una teoría legal que ya otros tribunales habían determinado era improcedente en derecho. ■ Por otro lado, Roche presentó en esa misma fecha una solicitud urgente para que se dictara sentencia desestimando con perjuicio las reclamaciones de los demandantes que no contestaron los interrogatorios, así como las de aquellos demandantes cuyas reclamaciones estaban prescritas, esto es, que se dictara sentencia desestimando las reclamaciones de ochenta y cuatro demandantes. (Págs. 545-563 del Apéndice).

El 29 de marzo de 2004, los allí demandantes se opusieron a la solicitud presentada por Roche. (Págs. 570-572 del Apéndice). En la misma, la parte allí demandante **admitió, luego de tres años de instado el pleito, que solamente continuaría litigando las reclamaciones de veinticinco codemandantes por estar todas las demás reclamaciones prescritas. A pesar de esto, los demandantes se opusieron a que el TPI dictara**

sentencia parcial desestimando las mismas con perjuicio bajo el fundamento de que no era necesario, toda vez que dichos co-demandantes se habían "*auto-excluido*" del pleito al no comparecer en la nueva demanda enmendada. Roche replicó a dicha oposición. Alegó que aunque no se oponía a la desestimación de las reclamaciones de los demandantes que no comparecieron en la demanda enmendada, el mecanismo correcto para darlos por desistidos, con perjuicio, era mediante una sentencia parcial a tenor con la Regla 43.5 de Procedimiento Civil, y no el mecanismo de "*auto-exclusión*". 32 L.P.R.A. Ap. III, R. 43.5.

El TPI emitió Resolución el 14 de mayo de 2004, permitiendo la enmienda a la demanda. De otra parte, **no dictó sentencia parcial** desestimando con perjuicio las reclamaciones de los 84 demandantes en cuestión, dándolas por desistidas sin perjuicio.

De ese dictamen, recurre Roche.

## II

El análisis que hemos hecho de los cientos de páginas del anejo de este caso, hace patente la inexplicable inacción del foro recurrido ante las múltiples mociones que se le presentaban. Ello ha propiciado que un caso que pudo encaminarse desde hace años, se encuentre aún ante la consideración de dicho foro. Ante la consistente negativa de los aquí recurridos en contestar interrogatorios desde el año 2001 y ante el **reconocimiento** de los propios reclamantes de que sus acciones estaban prescritas. No se desestimó la demanda.

Examinemos en detalle el reclamo de Roche.

En su primer señalamiento de error, Roche plantea que el foro recurrido incidió al no dictar sentencia parcial desestimando con perjuicio las causas de acción de aquellos demandantes **excluidos** de la demanda enmendada porque sus reclamaciones están prescritas. Plantea que algunos de esos demandantes **nunca** contestaron los interrogatorios y uno de ellos, voluntariamente, solicitó que se desestimara. Tiene razón.

El récord de este caso, copia del cual obra ante nosotros, demuestra que la demanda se presentó el 21 de agosto de 2000. Incluía ocho demandantes: Aida Álvarez, Ismael Camacho, Carmelo Curbelo, Fernando Marín, Nieves Martínez, Ivonne Miranda, José Rosario y Julio Tirado. El 7 de junio de 2001, se enmendó la misma y se incluyó 103 nuevos reclamantes y al patrono sucesor de algunos de ellos. Tras dicha enmienda, Roche inició el descubrimiento de prueba. El primer interrogatorio lo cursó el 8 de noviembre de 2001 **a cada uno** de los allí demandantes. Durante todo el año 2002, éstos solicitaron prórrogas. El tribunal las concedió todas. En cada una de ellas, el tribunal advertía que no concedería términos adicionales y apercibía de la imposición de sanciones. Los allí demandantes **nunca cumplieron** con lo ordenado en el término de más de un año. Ante su reiterado incumplimiento, Roche solicitó la desestimación de las causas de acción de veintiséis (26) demandantes que para marzo de 2003, aún no habían presentado contestaciones a los interrogatorios. Ante este cuadro de incumplimientos, el tribunal, una vez más, concedió otra oportunidad de cumplir con lo ordenado a los antes referidos veintiséis (26) demandantes. A esos efectos, el 8 de abril de 2003, dictó una orden concediendo un término final de 10 días a dichos demandantes para someter las contestaciones a los interrogatorios que desde noviembre de 2001, les había notificado Roche. Esta orden fue notificada el 14 de abril de 2003, tanto a los abogados de las partes, como a los 26 demandantes, de forma individual a sus direcciones de récord. En la orden, se les advirtió **de forma clara** que de no contestar los interrogatorios en el término concedido, **el tribunal procedería a la desestimación con perjuicio** de sus causas de acción. Los **demandantes nunca cumplieron con la orden del tribunal.**

A pesar de esto, el tribunal no dictó sentencia desestimatoria. **Más aún, no tomó acción alguna.** Tampoco desestimó la reclamación presentada por Vicente González Algarín, a pesar de que éste, **por escrito,** lo pidió aceptando que su reclamo estaba prescrito.

Así las cosas y transcurridos casi cuatro (4) años de presentada la demanda, el 18 de febrero de **2004,** la parte allí demandante, *una vez más,* pidió permiso para enmendar la demanda. Esta vez planteó que delimitaba la cantidad de reclamantes a 25. Roche se opuso. El tribunal permitió la enmienda *"y [dio] por desistido a todos los demandantes que no se encuentran incluidos en la demanda enmendada."* (Página 592 del apéndice – Resolución Recurrida). Erró.

En su dictamen, el tribunal no enumera quiénes son los demandantes que *"tiene por desistidos".* Tampoco se expresa que la desestimación es **con** perjuicio. Es decir, el tribunal adoptó la figura de la *"auto-exclusión"* y obvió el trámite dispuesto en nuestro ordenamiento procesal civil. A esos efectos, la Regla 43.5 de las de Procedimiento Civil dispone en lo pertinente:

*"Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra terceros o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.*

*...*

*En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes...".*

Véase 32 L.P.R.A. Ap. III, R. 43.5

Como se desprende de la regla citada, para desestimar las reclamaciones de los 84 demandantes en el pleito de epígrafe, era esencial que el Tribunal dictara una sentencia que cumpliera con la disposición citada. Más aún, era requisito que para que se dieran por terminadas dichas reclamaciones, la sentencia parcial tenía que ser registrada. Así, pues, en ausencia del lenguaje provisto en la citada regla, la realidad es que no se puso fin a las 84 reclamaciones.

En cuanto a los 23 demandantes que **nunca contestaron los interrogatorios** notificados por Roche desde el 8 de noviembre de 2001 y que también fueron excluidos de la demanda enmendada porque sus reclamaciones están prescritas, es evidente que también procedía que se dictara sentencia parcial desestimando con perjuicio sus reclamaciones. Al fin y al cabo, y conforme lo resuelto en los casos de *Lluch v. España Service Sta.,* 117 D. P.R. 729, 750-752 (1986); *Dávila Mundo v. Hospital San Miguel,* 117 D.P.R. 807, 814 (1986); *Importaciones Vilca v. Hogares Crea, Inc.,* 118 D.P.R. 679 (1987); *Fernández v. Fernández,* 120 D.P.R. 422 (1988), y *Marrero v. Vázquez,* 135 D.P.R. 174 (1994), el tribunal ya les había apercibido en un sinnúmero de ocasiones que debían contestarlos dentro del término concedido para ello.

Ciertamente, el foro recurrido no ejerció una sana discreción al no dictar sentencia parcial desestimando con perjuicio las referidas reclamaciones ante el desinterés demostrado por éstos en proseguir sus respectivas causas de acción. ▪

De otra parte, no alcanzamos a ver el porqué dicho foro, ante el reclamo de siete demandantes de que desistían voluntariamente de sus causas de acción, el **no** accedió a su reclamo. Ello, a pesar de que varios de estos le planteaban, bajo su propia firma, que reconocían que la acción instada estaba prescrita y otros **no** querían continuar litigando. Erró el tribunal al no desestimar con perjuicio las causas de acción. Erró, además, al no imponer sanciones a las partes que continuaron con la causa de acción, aun conociendo lo evidente: que sus

reclamos están prescritos.

Veamos el segundo error invocado.

El foro recurrido permitió una enmienda a la demanda de 25 demandantes bajo una teoría improcedente como cuestión de derecho.

Los demandantes **ahora** sostienen que debe permitirse la enmienda porque la presentación de las estipulaciones para la reducción del período para tomar alimentos firmadas por los demandantes y sometidas luego al Departamento del Trabajo, daban inicio a un *"trámite administrativo"*. Que ese trámite no se completó porque no se les notificó a ellos el permiso emitido por el Secretario del Trabajo. Esto es, la nueva teoría de los demandantes es que, en la medida en que no hubo notificación de los permisos a dichos demandantes, los permisos no adquirieron vigencia y Roche no podía reducir válidamente el período de tomar alimentos.

Vemos, pues que, en su origen, los allí demandantes apoyaban su reclamo en la teoría de los contratos. Ahora dejan atrás la misma y se apoyan en que su reclamo es a la luz del derecho administrativo.

No hemos encontrado, ni se nos ilustra tampoco de legislación o reglamentación alguna que apoye esta teoría.

El procedimiento usado por las agencias administrativas para entender en casos y reclamaciones individuales se conoce como la adjudicación. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. ed., Editorial Forum, 2001, pág. 139. Este proceso de adjudicación es muy parecido al que se usa tradicionalmente en los tribunales. Así las cosas, en todo procedimiento adjudicativo se tienen que salvaguardar los siguientes derechos: (1) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión esté basada en el expediente. *Id.*, pág. 140. Como vemos, este procedimiento adjudicativo es de naturaleza adversativa y contenciosa entre las partes, por lo que incluso se permite que **éstas estén representadas por abogado**. *Ibid.*

La agencia, por su parte, tiene que emitir una resolución final que tiene que ser notificada a las partes. La parte que no haya sido notificada, no podrá ser requerida a cumplir con la orden o resolución. De hecho, se ha interpretado que si no se cumple con el requisito de notificación, no se ha emitido una decisión válida que faculte a la agencia para requerirle el cumplimiento a la parte o partes contra las que se dirige la orden. *Ibid.*, págs. 178-179.

No podemos sostener que la petición para reducir el período para tomar alimentos y su consiguiente aprobación por el Departamento del Trabajo, sea un procedimiento adjudicativo o adversativo ante dicha agencia. No podemos perder de perspectiva que **la petición** de reducción **es un acuerdo suscrito por el empleado y el patrono, la cual se presenta con el único fin de obtener una aprobación final por parte del Departamento del Trabajo.**

Ni la legislación, ni la reglamentación aplicable a este asunto contiene disposición alguna de que el permiso de reducción del período de tomar alimentos tenga que ser **notificado al propio empleado** para que éste tenga vigencia y validez.

Ni la Ley Orgánica del Departamento del Trabajo, ni la Ley Núm. 379, ni el Reglamento para Regular el Disfrute del Período de Tomar Alimentos, Compensación y la Expedición de Permisos para su reducción de 1990, proveen derecho a una audiencia en los casos de solicitudes de permisos de reducción del período de tomar alimento. Véase 3 L.P.R.A. sec. 301 *et seq.*; Ley Núm. 379 y Reglamento. Por lo que tampoco se da

derecho alguno a un proceso adjudicativo o a notificación. Ni siquiera proveen para que se de copia al empleado de la solicitud o del permiso. ██

Finalmente, precisa señalar que tanto el Tribunal Supremo como nuestra legislatura han indicado que los procesos ante el Negociado de Normas del Departamento del Trabajo, **entidad que expedía los permisos,** son de carácter investigativo y no adjudicativo. Así, cuando se eliminó el requisito de aprobación de los permisos por parte de dicho Departamento, el legislador expresó que *"el Departamento del Trabajo y Recursos Humanos no tiene suficiente personal para cumplir con la complicada responsabilidad de investigar ... cada solicitud de reducción del período de tomar alimentos..."*. Exposición de Motivos de la Ley Núm. 83 de 20 de julio de 1995; *Maldonado Vega v. Russé Santiago,* **2001 J.T.S. 17**. Ello hizo, más evidente aún, que el acuerdo de reducción del período para tomar alimentos no inicia un proceso de petición administrativa.

La teoría de los demandantes sólo retrasaría innecesariamente los procedimientos en este caso. Procedía que al amparo de la Regla 13.1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R. 13.1, fuese denegada.

Erró el foro recurrido al permitir la enmienda en este caso. Sabido es que la liberalidad para concederlas **no** es infinita. La misma *"está condicionada por un juicioso ejercicio de discreción que ha de ponderar por el momento en que se solicitan, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda, el perjuicio que la misma causaría a la otra parte y hasta la naturaleza y méritos intrínsecos de la [reclamación] que tardíamente se plantea."* Véase *Epifanio Vidal, Inc. v. Suro*, 103 D.P.R. 793, 796 (1975). Dicha liberalidad se encuentra igualmente limitada, pudiéndose conceder enmiendas solamente en circunstancias *"demostrativas de que la omisión [de presentarla a tiempo] no se debió a falta de diligencia y que por otro lado no ha de irrogarse substancial perjuicio en términos de una solución justa, rápida y económica a la parte contra quien se opone."* Véase, *Epifanio Vidal, Inc. v. Suro, supra,* a la pág. 704. Véase, además, *Torres Cruz v. Municipio de San Juan,* 103 D.P.R. 217, 220 (1975).

Nuestro Tribunal Supremo ha rechazado el que en etapas avanzadas de los procedimientos se autoricen enmiendas a la demanda. Ello, ante el **claro perjuicio** que se ocasiona a una de las partes y el atraso en los procedimientos que las mismas acarrean. Véase, e.g. *Epifanio Vidal, Inc. v. Suro, supra; Pérez Cruz v. Hospital La Concepción*, 115 D.P.R. 721 (1984), y *Municipio de San Juan, supra.* Asimismo, *"es fútil la enmienda, si no sirve un propósito legítimo o no tiene mérito legal alguno"*. Véase, José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* a las págs. 316-318.

En consideración a lo expuesto, se expide el auto solicitado y se revoca la resolución recurrida. El foro de instancia proveerá de conformidad con lo aquí resuelto.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 131

**1.** Referido el escrito a este Panel, el 10 de agosto de 2004.

**2.** Eventualmente, la reclamación presentada por los demandantes contra Marion fue desestimada por el TPI el 5 de

noviembre de 2002, por no haberse diligenciado el emplazamiento a dicha co-demandada dentro del término dispuesto por las Reglas de Procedimiento Civil. (Págs. 112-131 del Apéndice). Dicho dictamen advino final y firme.

3. (Págs. 45-46 del Apéndice).

4. La Sentencia de Archivo Parcial fue archivada en autos y notificada a las partes el 8 de abril de 2003.

5. La Orden fue archivada en autos y notificada a las partes y a los propios co-demandantes el 14 de abril de 2003.

6. El 22 de abril de 2003, Roche presentó una moción en oposición a desistimiento voluntario sin perjuicio de las causas de acción prescritas. (Págs. 186-189 del Apéndice). En la misma, Roche expresa su desconcierto con respecto a la petición de la parte demandante en cuanto a que las reclamaciones de Declet, González y Rosa fueran desestimadas sin perjuicio, toda vez que estaban prescritas. Así, pues, Roche solicitó que las mismas fueran desestimadas con perjuicio y, además, le adelantó al TPI que pudiera haber más reclamaciones que estuvieran prescritas.

7. A esta moción también se opuso Roche en la medida en que se dictaminara que el desistimiento de la reclamación de Ramos fuera sin perjuicio. Págs. 190-191 del Apéndice.

8. Asimismo, Roche solicitó que se desestimaran con perjuicio las reclamaciones de aquellas co-demandantes que habían solicitado voluntariamente el desistimiento de sus respectivas reclamaciones y aquéllas que estuvieran prescritas.

9. Tampoco la hemos encontrado nosotros.

10. Citó los siguientes casos: *Pedro Sánchez Isaac, et al. v. Silvana Lighting Co. y/o Sylvania Manufacturing Co. y/o Osram Sylvania Puerto Rico Corp*, KLAN-03-00477, Cir. Regional VII de Carolina y Fajardo, Sentencia de 31 de octubre de 2003, petición de *Certiorari* al Tribunal Supremo de Puerto Rico denegada. Véase, además, *Jiménez Marrero, et al. v. General Instruments, Inc. y/o Next Level Corp.*, DPE-2000-0739, Centro Judicial de Bayamón, Sala Superior, Sentencia de 7 de agosto de 2002; y *Francisco Rosado et al. v. WLI*, DPE-1993-0281, Centro Judicial de Bayamón, Sala Superior, Sentencia de 21 de mayo de 2004.

11. Igual proceder han seguido ante el foro apelativo ante el incumplimiento tardío con nuestras órdenes.

12. Cuando el Departamento del Trabajo ha entendido que los obreros deben ser notificados de permisos, así expresamente lo ha señalado. A esos efectos, en el Reglamento del Contrato Probatorio de Trabajo en el año 1999, el Secretario de dicha agencia expresamente dispuso en el Artículo IX que el patrono debía notificar copia de la determinación concediendo o denegando la solicitud de extensión del contrato de empleo probatorio. Por tanto, en ausencia de una expresión a esos efectos tanto en la ley como en el reglamento, no procede que se disponga tal requisito por fíat judicial. Véase *Lasalle Lugo v. Junta de Directores A.C.C.A.*, 140 D.P.R. 694, 696 (1996); *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743, 750 (1952); *Alejandro Rivera v. E.L.A.*, 140 D.P.R. a la pág. 545, citado en *Juarbe v. Registrador*, **2002 J.T.S. 38**.