ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| MR MÉNDEZ CONSTRUCTION, CORP.<br><br>Peticionario<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE MANATÍ<br><br>Recurrido | KLCE202500591 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Número: AR2023CV01030<br><br>Sobre: Incumplimiento de Contrato; Enriquecimiento Injusto; Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de julio de 2025.

Comparece Mr. Méndez Construction, Corp. ("Mr. Méndez" o "Peticionario") mediante *Certiorari* y nos solicita que revoquemos una *Orden* emitida el 1 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo ("TPI"). Mediante el referido dictamen, el TPI denegó una solicitud instada por el peticionario para enmendar las alegaciones de la demanda.

Por los fundamentos que proceden, se *deniega* la expedición del auto de *certiorari* solicitado.

### I.

El 5 de junio de 2023, Mr. Méndez presentó una *Demanda* en contra del Municipio Autónomo de Manatí ("Municipio" o "Recurrido") por incumplimiento contractual, enriquecimiento injusto y cobro de dinero.[1] Previo a que el Municipio presentara su alegación responsiva, el 6 de noviembre de 2023, Mr. Méndez instó una *Demanda Enmendada*.[2]

---

[1] Apéndice de la parte peticionaria, págs. 1-5.
[2] Véase, SUMAC, Entrada #18.

En lo aquí pertinente, alegó que, en el 2015, la Junta de Subastas del Municipio le adjudicó la buena pro de la construcción del Centro de Convenciones del referido Municipio. Señaló que, el 5 de octubre de 2015, las partes suscribieron un *Contrato para la Construcción del Centro de Convenciones del Municipio Autónomo de Manatí*. Adujo que, posterior al perfeccionamiento del contrato, las partes suscribientes acordaron unas Órdenes de Cambio, las cuales, respectivamente, enmendaron y extendieron el término del contrato y el tiempo disponible para completar las obras. No obstante, detalló que, el 16 de diciembre de 2016, paralizó la construcción, debido a que el Municipio no aprobó las Órdenes de Cambio correspondientes para la extensión del contrato.

Por otra parte, particularizó que el Municipio le adeudaba la cantidad de $429,496.48, correspondiente a las obras realizadas y no pagadas, más una cantidad no menor a $30,000.00, por concepto de honorarios de abogado.

Culminado el descubrimiento de prueba, el 24 de enero de 2025, el Municipio instó una *Moción de Sentencia Sumaria*.[3] En síntesis, arguyó que las Órdenes de Cambio no extendían la vigencia del contrato hasta tanto fueran firmadas por ambas partes y registradas en la Oficina del Contralor de Puerto Rico ("Oficina del Contralor"). De manera particular, expuso que, el 26 de noviembre de 2016, luego de la aprobación de cuatro (4) Órdenes de Cambio, el contrato venció, sin que existiera una enmienda posterior. Añadió que después de vencido el contrato recibió las Órdenes de Cambio números 5, 6 y 7, firmadas por varias partes, incluyendo al peticionario. Sin embargo, sostuvo que las mismas no cobraron vigencia, ya que no fueron registradas en la Oficina del Contralor. Entre los documentos presentados, el Municipio anejó las Órdenes de Cambio.

Ante ello, el 21 de febrero de 2025, el peticionario notificó su *Moción en Oposición a la Sentencia Sumaria*. En lo aquí pertinente, sostuvo que

---

[3] *Íd.*, págs. 6-121.

las Órdenes de Cambio número 5, 6 y 7 constituyen enmiendas contractuales válidas y vinculantes. Siendo así, arguyó que la prueba documental demostraba que el contrato fue extendido, ya que las Órdenes de Cambio fueron firmadas por las partes, a pesar de que el Municipio omitió notificar dichas Órdenes de Cambio a la Oficina del Contralor.

Posteriormente, el 10 de marzo de 2025, Mr. Méndez notificó una *Moción Informativa Sometiendo Demanda Enmendada.*[4] El peticionario solicitó autorización para enmendar las alegaciones, a los efectos de exponer que las Órdenes de Cambio número 5, 6 y 7 fueron firmadas por las partes y, como consecuencia, extendieron el contrato.

El 19 de marzo de 2025, el Municipio instó una *Moción en Oposición a Moción Informativa Sometiendo Demanda Enmendada y en Oposición a Demanda Enmendada.*[5] Expuso que la enmienda solicitada le ocasionaría un perjuicio indebido, ya que complicaría los procedimientos con planteamientos carentes de justificación legal. Además, puntualizó que el descubrimiento de prueba había finalizado y estaba pendiente por adjudicar una solicitud de sentencia sumaria. Asimismo, sostuvo que Mr. Méndez omitió justificar la demora en solicitar la enmienda.

Aquilatadas las posturas de las partes, el 1 de abril de 2025, el foro de instancia dictó una *Orden* en la cual denegó la solicitud de enmienda a la demanda.[6]

Insatisfecho, el peticionario presentó una *Moción en Solicitud de Reconsideración.*[7] Mr. Méndez señaló que la enmienda solicitada no introducía nuevas causas de acción, ni alteraba sustancialmente la naturaleza del pleito, sino que proveía una exposición más clara y organizada de la controversia. A su vez, señaló que las nuevas alegaciones surgían de los documentos provistos por el Municipio durante el

---

[4] *Íd.*, pág. 327.
[5] Véase, SUMAC, Entrada #68.
[6] Apéndice de la parte peticionaria, pág. 343.
[7] *Íd.*, págs. 344-345.

descubrimiento de prueba y los cuales utilizó en apoyo a su solicitud de sentencia sumaria.

Por su parte, el 21 de abril de 2025, el Municipio notificó su *Moción en Oposición a Reconsideración de Orden Denegando Segunda Demanda Enmendada*.[8] Expresó que el peticionario anejó en su *Demanda Enmendada* las mismas Órdenes de Cambio números 5, 6 y 7 que ahora pretendía utilizar como fundamento para enmendar las alegaciones. Así, también, señaló que las referidas Órdenes de Cambio fueron producidas por el Municipio en su contestación a interrogatorio del 9 de septiembre de 2024. Por todo lo cual, adujo que, previo a presentar su solicitud de sentencia sumaria, Mr. Méndez ya conocía el contenido de los documentos que ahora intentaba usar como base.

El 29 de abril de 2025, el foro de instancia dictó una *Orden*, notificada al día siguiente, en virtud de la cual denegó la solicitud de reconsideración instada por Mr. Méndez. En específico, el TPI emitió el siguiente pronunciamiento:

> **Estando sometida para adjudicación una Moción de Sentencia Sumaria presentada por la parte demandada, así como su oposición a la misma una vez finalizado el descubrimiento de prueba**, se reitera No Ha Lugar a la enmienda a demanda solicitada.[9]

(Énfasis suplido)

Inconforme aún, el 30 de mayo de 2025, Mr. Méndez acudió ante esta Curia mediante *Certiorari*. El peticionario realizó los siguientes señalamientos de errores:

> **Erró el Tribunal de Primera Instancia al no aplicar correctamente la norma liberal contenida en la Regla 13.1 de Procedimiento Civil, que exige permitir enmiendas a las alegaciones cuando no existe perjuicio sustancial a la parte contraria y cuando la justicia así lo requiera.**
>
> **Erró el Tribunal de Primera Instancia al ejercer su discreción de manera arbitraria e irrazonable, al negarse a autorizar una enmienda que no implicaba dilación procesal ni requería nuevo descubrimiento de prueba, pues se basaba exclusivamente en documentos generados y sometidos por el propio Municipio de Manatí.**

---

[8] Véase, SUMAC, Entrada #71.
[9] Apéndice de la parte peticionaria, pág. 346.

El 16 de junio de 2025, el Municipio presentó su *Oposición a Recurso de Certiorari.* Perfeccionado el recurso y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation,* 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para analizar el problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

La Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, establece el trámite para enmendar las alegaciones. Al respecto, dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva. Si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. **En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; el permiso se concederá liberalmente cuando la justicia así lo requiera.** La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal lo ordene de otro modo.

(Énfasis suplido)

Cónsono con esta disposición, una vez que las partes han intercambiado alegaciones, solamente podrán enmendarlas con el consentimiento escrito de la parte contraria o con el permiso del tribunal. Nuestro más Alto Foro ha resuelto que los tribunales deberán conceder el permiso para enmendar las alegaciones originales de forma liberal, aun cuando el proceso se encuentre en una etapa avanzada. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 198 (2012). A lo anterior, debe integrarse que existe una clara política judicial de que los casos se ventilen en sus méritos. *Íd.*

A pesar de que las Reglas de Procedimiento Civil favorecen un enfoque liberal para autorizar enmiendas a las alegaciones, esta liberalidad no es infinita. *Colón Rivera v. Wyeth Pharm.*, *supra*, pág. 199, citando a *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322 (2010); *Romero v. S.L.G. Reyes*, 164 DPR 721, 730 (2005); *Epifanio Vidal, Inc. v. Suro*, 103 DPR 793, 796 (1976). En atención a ello, los tribunales poseen amplia facultad discrecional para permitir enmiendas a una demanda, aun en etapas avanzadas del procedimiento. *Colón Rivera v. Wyeth Pharm.*,

*supra*, pág. 198, citando a J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, Colombia, [S. Ed.], 2010, pág. 116.

El Tribunal Supremo ha expresado que, antes de autorizar una enmienda a las alegaciones, el tribunal debe analizar y tomar en consideración: (1) el impacto del tiempo trascurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada. *Colon Rivera v. Wyeth Pharm*, *supra*, a la pág. 199, citando a *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 748 (2005). Sin embargo, el Alto Foro ha reiterado que, "[e]l factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarse a la parte contraria". *Íd.*

**III.**

El peticionario nos solicita que revoquemos la *Resolución* mediante la cual el foro primario denegó su solicitud para enmendar las alegaciones. De manera particular, fundamenta que las referidas enmiendas no ocasionarían un perjuicio sustancial ni dilatarían el procedimiento.

Ahora bien, el peticionario admite que solicitó enmendar las alegaciones "para incorporar reclamaciones directamente sustentadas por documentos generados, producidos y sometidos por el propio Municipio de Manatí"[10], a saber, las Órdenes de Cambio números 5, 6 y 7. Sin embargo, omite aclarar que los referidos documentos ya habían sido presentados junto a la demanda original. En todo momento, Mr. Méndez ha tenido a su disposición las Órdenes de Cambio pertinentes. De tal modo que, desde un inicio, ha conocido la información que ahora trata de utilizar como fundamento para su solicitud. No obstante, esperó hasta que culminara el descubrimiento de prueba y quedara sometida para adjudicar una solicitud de sentencia sumaria para intentar enmendar la

---

[10] *Certiorari*, pág. 7.

demanda por segunda ocasión. Ante tal cuadro fáctico, el TPI declaró *No Ha Lugar* la solicitud instada por Mr. Méndez para presentar una segunda demanda enmendada.

Cabe destacar que, al comparar la segunda *Demanda Enmendada* con la *Moción en Oposición a la Sentencia Sumaria,* nos percatamos de que las enmiendas propuestas fueron discutidas ampliamente por Mr. Méndez en la oposición sometida. Como corolario, tales alegaciones serán debidamente atendidas por el foro de instancia al momento de adjudicar la solicitud de sentencia sumaria.

Examinado sosegadamente el expediente, a la luz de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual esta Curia deba intervenir en esta etapa de los procedimientos. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. En el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

**IV.**

Por los fundamentos que anteceden, se *deniega* la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones